UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY I.,[1] <br><br> Plaintiff <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] <br><br> Defendant. | Case No. 2:20-cv-07882-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Gary I. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the undersigned United

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See https://www.ssa.gov/history/commissioners.html*. She is therefore substituted as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

States Magistrate Judge and filed briefs addressing the disputed issues in this case. [Dkt. 16 ("Pltf's. Br."), Dkt. 20 ("Def. Br.").] The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

### II. ADMINISTRATIVE DECISION UNDER REVIEW

On January 18, 2017, Plaintiff filed applications for SSI and DIB alleging disability beginning January 7, 2016. [Dkt. 16, Administrative Record ("AR") 306-309.] Plaintiff's applications were denied at the initial level of review and on reconsideration. [AR 121-128.] On May 21, 2019, Administrative Law Judge Paul Coulter ("the ALJ") conducted an administrative hearing. [AR 136-160.] On January 6, 2019, the ALJ issued an unfavorable decision. [AR 21-35.]

The ALJ applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [AR 23.] At step two, the ALJ found that Plaintiff suffered from severe impairments including bipolar disorder, depression, anxiety, mood disorder, post-traumatic stress disorder (PTSD), lumbar strain and intervertebral disc degeneration, sciatica, diabetes mellitus with diabetic neuropathy, hypertension, morbid obesity, obstructive sleep apnea, atherosclerotic heart disease, umbilical hernia, and status post cholecystectomy and gastric sleeve. [AR 23.] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 25]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work (20 C.F.R. § 404.1567(a)), including he can:

> engage in postural activities on a frequent basis, except for no ladders, ropes, or scaffolds. The claimant can understand, remember, and carry

    out simple job instructions. The claimant can maintain attention and concentration to perform non-complex routine tasks in a work environment free of fast-paced production requirements. The claimant should not have any direct interaction with the general public.

[AR 27.] Applying this RFC, the ALJ found at step four that Plaintiff was not able to perform his past relevant work as a Tow Truck Dispatcher or a Power Line Examiner. [AR 34]. However, at step five, the ALJ found that Plaintiff was capable of performing other work that exists in significant numbers in the economy. [AR 35.]

Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This action followed.

## II. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite

the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting Plaintiff's Credibility

Plaintiff argues that the ALJ failed to state sufficient reasons for finding his subjective symptom testimony not fully credible. [Pltf's. Br. at 7-22.]

#### 1. Legal Standard

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "clear and convincing" reasons to reject the claimant's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995))). Moreover, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991). In addition to the "ordinary techniques of credibility evaluation," *Bunnell*, 947 F.2d at 346, the following factors may be considered in assessing credibility: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature,

severity, and effect of claimant's condition.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

### 2. Plaintiff's Testimony

At the hearing on May 21, 2019, Plaintiff testified that he was currently 52 years old.  [AR 139.]  He has three adult children and he currently resides in hotels with his wife.  [AR 139.]

When asked about his former employment, Plaintiff testified that he most recently worked in 2018 as a truck driver, but that position was short lived.  Plaintiff explained that the Resource Center who helped place him at the job discovered that he was ineligible to drive trucks while taking his prescribed medications.  [AR 141.]  He also suffered from memory problems while on the job which caused him to go to incorrect locations.  [AR 141.]  Before that, Plaintiff worked at a call center for the National Auto Club helping drivers with roadside assistance.  Plaintiff was "let go" from that position because he "had some outbursts" and "he couldn't maneuver through the [computer] systems very well."  [AR 143.]  Plaintiff explained that he was "diagnosed as a bipolar" when he was a teenager."  He believed he had his symptoms under control as he got older and he stopped taking his medication, but his symptoms began to get out of control over the last "few years."  [AR 143.]   The ALJ noted that Plaintiff had a consistent work history until 2012 and Plaintiff implied that the dramatic shift in his work history was related to the murder of his 18-year-old stepson which occurred in 2015.  [AR 143-144.]

When asked about his impairments, Plaintiff testified that he suffers from a variety of physical impairments including intense back pain, burning sensations throughout his feet and arms, carpal tunnel syndrome, diabetes, high blood pressure and sleep apnea.  [AR 144, 146-147]  Doctors prescribed Plaintiff a walker in 2013 and he spends about 85% of his day laying down.  [AR 141, 149.]  With respect to his mental impairments, Plaintiff testified he has trouble focusing and he suffers from bipolar disorder.  [AR 146.]  For his mental health treatment, Plaintiff

primarily takes Latuda, a prescription medication, and he sees a psychologist and a therapist. [AR 146.]

The ALJ summarized the testimony of Plaintiff as follows:

> The claimant alleges that he suffers from mental disorders including bipolar disorder, depression, anxiety, and mood disorder. The claimant says that he has memory problems and does not remember directions. The claimant also reports having difficulty with concentration, completing tasks, handling stress, and getting along with others, and endorses visual and auditory hallucinations. According to the claimant, he was terminated from his last job as a dispatcher due to performance issues caused by poor memory and angry outbursts associated with his bipolar disorder. Functionally, the claimant estimates that he can pay attention for around 30 minutes and says he does not follow spoken instructions well. The claimant alleges that his psychiatric medications cause sleepiness and reduced sex drive.
>
> The claimant also alleges that he suffers from physical impairments and symptoms including back and neck injuries, carpal tunnel syndrome in the bilateral wrists, nerve damage, diabetes, hypertension, and high cholesterol. The claimant says that he has lower back pain caused by severe "breaks" in his back and neck, which he says was shown to him on magnetic resonance imaging (MRI) findings by multiple doctors. The claimant reports that he experiences burning sensations throughout his feet, arms, neck, and that his lower back pain radiates throughout his whole back to his buttocks and legs. According to the claimant, the pain is usually at an 8 or 9 out of 10. The claimant says he is in constant pain and has a hard time getting out of bed. The claimant says that he takes a lot of medications for his pain and for his other impairments, and that his medications cause him to be sleepy.
>
> Functionally, the claimant reports that his impairments cause limitations for nearly all physical tasks including lifting, bending, squatting, reaching, using his hands, standing, walking, and sitting. The claimant estimates that he can sit for 15 to 20 minutes at a time before he has to stand up and change positions. The claimant estimates that he can stand 3-5 minutes if he needs to bend, and 5 minutes if he is just standing up straight. According to the claimant, the most comfortable position for him is lying down, and he lies down for around 85% of the day. The claimant estimates that he can walk for

about one block.  The claimant reports that he has been using a prescription walker since 2013.  The claimant says that he also has a manual wheelchair which is difficult to use due to his carpal tunnel syndrome.  The claimant estimates that he could lift five pounds for only a few repetitions.

[AR 28-29.]

### 3.  Analysis

Because there is no allegation of malingering and the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" [AR 29], the ALJ's reasons must be clear and convincing.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation omitted).

The ALJ provided three reasons to reject Plaintiff's credibility including: (1) Plaintiff's symptoms were adequately controlled with generally conservative treatment; (2) Plaintiff's daily activities suggest he was more capable than alleged; and (3) Plaintiff's subjective symptom allegations were inconsistent with the objective medical evidence.  The Court discusses and rejects these reasons below.

### a.  Conservative Treatment

First, the ALJ discounted Plaintiff's testimony because "the record indicates a conservative treatment history" for Plaintiff's physical and mental impairments. [AR 29-30.]  The ALJ determined that with respect to Plaintiff's "spine impairments and sciatica," Plaintiff has only been treated with "baclofen, tramadol, ibuprofen, and was recommended stretching exercises." [AR 30.]  With respect to Plaintiff's mental impairments, the ALJ noted that Plaintiff has "been receiving outpatient

1   mental health services, including seeing a psychologist and therapist, and taking
2   psychiatric medications including Latuda, bupropion, and hydroxyzine." [AR 29.]
3   The ALJ, however, classified Plaintiff's overall mental health treatment as
4   conservative, in part, because Plaintiff "has never been psychiatrically hospitalized."
5   [AR 30.]  The Ninth Circuit has held that evidence of "conservative treatment" is
6   sufficient to discount a claimant's testimony regarding the severity of an
7   impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

8        Plaintiff disputes the ALJ's characterization of his treatment as conservative,
9   noting that he has had "multiple [trigger point] injections for his pain in the lumbar
10  and thoracic spine as well as the shoulder." [AR 103, 108, 115.]  Plaintiff also
11  contends that his various prescription medications for his mental impairments
12  cannot and should not be considered conservative.

13       In the relevant portion of the opinion discussing the conservative treatment
14  finding for Plaintiff's physical impairments, the ALJ does not refer at all to
15  Plaintiff's multiple spinal injections received on June 6, 2018, July 16, 2018,
16  January 28, 2019, March 25, 2019 and October 14, 2019.  [AR 103, 105, 108, 115-
17  118, 123-124, 134.]  Instead, the ALJ characterizes Plaintiff's physical impairment
18  treatment as conservative based solely from his prescription medications and
19  prescribed stretching exercises.

20       Some courts have found that the use of narcotic medication, without other
21  treatment, may, in the appropriate circumstance, properly be considered
22  conservative treatment.  *See Agustin C. v. Saul*, 2020 U.S. Dist. LEXIS 53986, 2020
23  WL 1491338, at *3 (CD. Cal. Mar. 26, 2020) (*citing Huizar v. Comm'r of Soc. Sec*,
24  428 F. App'x 678, 680 (9th Cir. 2011)); *Durham v. Colvin*, 2015 U.S. Dist. LEXIS
25  170389, 2015 WL 9305627, at *11 (CD. Cal. Dec. 21, 2015) (collecting cases).
26  However, several district courts in the Ninth Circuit have founded that spinal
27  injections, particularly when taken in conjunction with narcotic medication or
28  certain other treatments, may constitute treatment that should not be considered

8

conservative. *See Yolanda Estela H. v. Kijakazi*, No. 5:20-cv-00234-PD, 2021 U.S. Dist. LEXIS 189611, at *17 (C.D. Cal. Sep. 30, 2021) (indicating that Plaintiff's three sets of trigger point injections along with "Norco" pain medication is not conservative treatment); *Miller v. Colvin*, 2014 U.S. Dist. LEXIS 65230, 2014 WL 1873276, at *2 (C.D. Cal. May 9, 2014) (finding that there is "no basis in the record to support the ALJ's conclusion that the prescribed treatment [consisting of prescribed pain medication, like Tramadol and Naproxen, and lumbar facet block injections] was 'conservative' in the sense of being less aggressive than other viable, available treatment"); *but see Dianna K. v. Saul*, 2019 U.S. Dist. LEXIS 140352, 2019 WL 13037009, at *4 (CD. Cal. Aug. 19, 2019) (finding that a single or occasional steroid injection may be considered conservative treatment) (collecting cases). District courts have not followed a "consistent path" in addressing whether the related treatment of epidural steroid injections constitute conservative treatment. *See Robertson v. Berryhill*, 2017 U.S. Dist. LEXIS 193619, 2017 WL 5634102, at *5 (CD. Cal. Nov. 21, 2017) ("District courts in [the Ninth] Circuit have not followed a consistent path regarding whether epidural steroid injections constitute conservative treatment.").

Here, consideration of Plaintiff's trigger point and shoulder injections appears necessary for a proper consideration of whether Plaintiff's treatment may be considered conservative and whether the treatment adequately controlled Plaintiff's physical impairment symptoms. It does not appear the ALJ considered these injections in reaching his conservative treatment finding. Although the Court does not find that consideration of such treatment must alter the ALJ's ultimate conclusion, the Court cannot say that the ALJ's finding of conservative treatment is supported by substantial evidence when a potentially material treatment was not, at least facially, considered by the ALJ in reaching his conclusion. *See Agustin C*, 2020 U.S. Dist. LEXIS 53986, 2020 WL 1491338, at *4 (finding that the ALJ's finding of conservative treatment was not supported by substantial evidence because

the ALJ failed to recognize that the record reflected that other non-conservative treatment options, including epidural injections and surgery, were discussed with or recommended to plaintiff); *Cartier v. Berryhill*, 2018 U.S. Dist. LEXIS 25970, 2018 WL 922250, at *4 (W.D. Wash. Jan. 30, 2018) (finding that the ALJ's determination that plaintiff received conservative treatment was unsupported by the record because the ALJ failed to mention that plaintiff had also engaged in both physical therapy and chiropractic treatments in addition to steroid injections and medications), *report and recommendation adopted by* 2018 U.S. Dist. LEXIS 25340, 2018 WL 905616 (W.D. Wash. Feb. 15, 2018).

Additionally, the ALJ's conservative treatment finding with respect to Plaintiff's mental impairments is not supported by substantial evidence. Plaintiff has multiple severe mental impairments for which he takes several prescription medications, including Latuda, Wellbutrin (bupropion), and Vistaril (hydroxyzine). [AR 562.] At one point, Plaintiff took Zoloft, but he reported sexual side effects and it was discontinued. [AR 30.] Courts have established that medication treatment regimens with such medications are not conservative. *See Maria B. v. Saul*, 2020 U.S. Dist. LEXIS 204807, 2020 WL 11884826, at *7 (C.D. Cal. Oct. 30, 2020) (Raxulti, Latuda, Prozac, Paxil, Zoloft, Efflexor); *Wilson v. Berryhill*, 2018 U.S. Dist. LEXIS 113728, 2018 WL 6321629, at *4 (C.D. Cal. Jul. 9, 2018) (Prozac, Trazadone, Wellbutrin, Seroquel, Zoloft, Ativan, Paxil); *see also* SSR 16-3p, 2016 SSR LEXIS 4 at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show they are intense and persistent"). Nor must a claimant undergo psychiatric hospitalization to be considered disabled. *Torquato v. Berryhill*, 2018 U.S. Dist. LEXIS 104318, 2018 WL 3064568, at *6 (S.D. Cal. Jun. 20, 2018); *Matthews v. Astrue*, 2012 U.S. Dist. LEXIS 47903, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012).

Accordingly, the ALJ's finding that conservative treatment adequately controlled Plaintiff's symptoms is not supported by substantial evidence and thus is not, on the current record, a clear and convincing reasons for discounting Plaintiff's testimony. *See Kelly v. Astrue*, 471 F. App'x 674, 676 (9th Cir. 2012) (observing that while an ALJ need not discuss all evidence before him, he must explain why significant probative evidence has been rejected) (*citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

        **b.**      **Daily Activities**

Second, the ALJ found that Plaintiff's reported daily activities were (1) inconsistent with the presence of an incapacitating or debilitating condition and (2) involved the same abilities as those necessary for obtaining and maintaining employment. [AR 32.] The specific activities the ALJ cited included "dressing, bathing, using public transportation. Shopping, driving, caring for sick relatives, managing finances, and preparing meals." [AR 32.] In general, an ALJ may base an adverse credibility determination on evidence of a claimant's daily activities on two grounds: the stated activities contradict the claimant's other testimony, or they meet the threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Minimal activities such as "house chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities." *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017). Rather, an ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639; *Smith v. Berryhill*, 704 F. App'x 652, 653 (9th Cir. 2017) (same).

Here, while it appears that the ALJ attempted to invoke both grounds, the ALJ failed to explain how Plaintiff's meager daily activities were somehow inconsistent with his own statements nor how the stated activities went beyond minimal personal

11

activities and approached those of traditional work responsibilities. In fact, the ALJ did not make *any* specific findings regarding Plaintiff's daily activities. Rather, the ALJ merely summarized the minimal activities that Plaintiff testified about performing and opined that those interactions demonstrate that Plaintiff is not as impaired as he alleges. But, "[t]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from h[is] credibility as to h[is] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001). Further, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). Accordingly, the ALJ's failure to identify inconsistencies or make any connection between Plaintiff's mundane daily activities and his ability to perform work-related responsibilities on a regular basis precludes this Court from finding that Plaintiff's daily activities could serve as a clear and convincing reason to doubt his testimony. *Diedrich*, 874 F.3d at 643.

      The ALJ's only remaining reason for discounting Plaintiff's subjective allegations was inconsistency with the objective medical evidence. The ALJ may rely on a lack of objective medical evidence as one factor in the analysis, but it may not rely exclusively on that one factor to discount Plaintiff's subjective allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Thus, Plaintiff's objective medical evidence, even if inconsistent with Plaintiff's subjective allegations, cannot alone constitute a reason to reject Plaintiff's subjective allegations.

Accordingly, Plaintiff has shown error, and this matter must be remanded for reconsideration of Plaintiff's testimony.

**B.     Constitutional Challenge**

In a "Notice of New Authority," filed after Defendant's Opposition brief, Plaintiff suggests that the decisions of the United States Supreme Court in *Collins v. Yellen*, 141 S.Ct. 1761, 1783-84, 210 L. Ed. 2d 432 (2021) and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192, 207 L. Ed. 2d 494 (2020), as well as an opinion issued by the White House's Office of Legal Counsel ("OLC"), cast doubt on the constitutionality of the statute under which Andrew Saul (who was Commissioner of Social Security when the Appeals Council denied his request for review) was appointed.

Numerous courts presented with this challenge have deemed it to be without merit or concluded that the claimant lacked standing. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring in part) (expressing doubt that the decision would require "the mass of SSA decisions . . . to be undone"); *see, e.g., Standifird v. Kijakazi*, No. 20CV1630-GPC(BLM), 2021 WL 5634177 (S.D. Cal. Dec. 1, 2021); *Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 U.S. Dist. LEXIS 186705, at *6-7 (D. Nev. Sep. 29, 2021) ("Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing."); *Hester v. Comm'r of Soc. Sec.*, No. C21-0228-SKV, 2021 U.S. Dist. LEXIS 189112, at *5-6 (W.D. Wash. Sep. 30, 2021); *Robles v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 180304, 2021 WL 4285170, at *4 n.6 (E.D. Cal. Sept. 21, 2021).

However, this Court need not reach this issue as a remand is being ordered for further proceedings.

///

///

**C.  The Court Declines to Address Plaintiff's Remaining Issue**

Having found that remand is warranted to reconsider Plaintiff's subjective symptom testimony, the Court declines to address Plaintiff's remaining issue. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## IV.  CONCLUSION

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* A remand for an immediate award of benefits is appropriate "only in rare circumstances." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

Here, the Court concludes remand for further proceedings is warranted to reassess Plaintiffs subjective symptom testimony. Because the record raises crucial questions about the extent to which Plaintiff's pain and accompanying symptoms render him disabled, remand on an "open record" is appropriate before a proper disability determination can be made by the ALJ. *See Brown-Hunter*, 806 F.3d at 496. Nothing in this Order limits the ALJ in making any findings on remand.

Accordingly, on remand, the ALJ shall reassess Plaintiff's subjective symptom complaints and then reassess Plaintiff's RFC in light of the reassessed subjective symptom testimony, if warranted, and proceed through the remaining steps of the disability analysis to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers in the national economy.

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the Decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: January 24, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE